IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUHAMAD ALY RIFAI, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>CMS MEDICAL CARE CORPORATION,<br>GNADEN HUETTEN MEMORIAL HOSPITAL,<br>and ANDREW E. HARRIS,<br><br>Defendants. | CIVIL ACTION<br>NO. 15-1395 |

**MEMORANDUM OPINION**

**Schmehl, J.   /s/ JLS**                                                                 **September  21, 2017**

## I.     INTRODUCTION

Plaintiff, Muhamad Aly Rifai, M.D., brings this suit against his former employer, CMS Medical Care Corporation, Gnaden Huetten Memorial Hospital and Andrew E. Harris ("Defendants"). After a Motion to Dismiss, the remaining claims brought against Defendants are Title VII claims for national origin and religious discrimination, a claim under the Americans with Disabilities Act ("ADA"), a claim under the Pennsylvania Wage Payment and Collection Law, and a breach of contract claim. Before the Court is the Motion for Summary Judgment of Defendants, Defendants' Statement of Material Facts, Plaintiff's opposition to the motion, and Defendants' reply. Also pending is Defendants' Motion for Leave to Amend Answer to Amended Complaint, Plaintiff's opposition and Defendants' reply.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material

fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**B. FACTUAL BACKGROUND**[1]

Plaintiff is a medical doctor who is board certified in psychiatry. (Rifai Dep., pp. 9-10.) Defendant CMS is a Pennsylvania corporation that provides health care services by

---

[1] With their Motion for Summary Judgment, Defendants filed a "Joint Statement of Material Facts," as required by my policies and procedures when filing a motion for summary judgment. Plaintiff points out in his response that in fact, this is not a joint statement of facts, as Defendants failed to consult with Plaintiff at any time prior to filing this document and that many of the facts contained therein are disputed. I am disappointed by Defendants' failure to follow my policies and procedures, but do not find, as suggested by Plaintiff, that this failure is sufficient reason to deny Defendants' motion in its entirety.

2

managing physician practices and is a subsidiary of Blue Mountain Health System ("BMHS"). (Harris Dep., pp. 10-11.) Defendant Gnaden Huetten Memorial Hospital is a hospital located in Carbon County, Pennsylvania that is also a subsidiary of BMHS. (Harris Dep., pp. 9-10.) Defendant Andrew Harris ("Harris") is President and CEO of BMHS and its subsidiaries, including CMS. (Harris Dep., pp. 10-11.)

On March 7, 2011, Plaintiff and CMS executed a written employment contract ("Contract 1") for a three-year term to employ Plaintiff as a physician and to provide medical services at Gnaden Huetten, as well as Palmerton Hospital. (Rifai Dep., pp. 33-35, Ex. D.) Plaintiff was to earn a $250,000 base salary, and would be "eligible to receive 75% of all fees collected for professional services in excess of $250,000 per year." (Ex. D, ¶ 2(a); Rifai Dep., p. 45.)

On May 1, 2012, Plaintiff and CMS executed a second written employment contract ("Contract 2") to replace Contract 1 and run for a period of three years. (Ex. F.) The section of Contract 2 titled "Compensation" stated that "Physician's salary shall be THREE HUNDRED THOUSAND DOLLARS ($300,000.00) per annum, payable bi-weekly in equal installments. . . In addition to the base salary, the physician will be eligible for incentive compensation. Physician will be eligible to receive 75% of all fees collected for professional services in excess of $325,000 per year. Physician will receive 20% credit for Nurse Practitioner collections. Compensation will be capped at $400,000.00." (Ex. F.) Paragraph 10 of both contracts states: "The Agreement will terminate if either party gives the other party written notice of such party's desire to terminate the Agreement at least one hundred twenty (120) days prior to the intended termination date." (Ex. D and Ex. F, ¶ 10.) Both Contracts also state: "This Agreement

may be terminated immediately by CMS upon the occurrence of any of the following: . . . (e) The Physician engages in willful or intentional breach or gross neglect of his duties under this Agreement." (Ex. D and Ex. F, ¶ 11.) In addition, Paragraph 1(b) of both Contracts provides, in pertinent part: "[T]he Physician shall comply with all policies, rules and regulations of CMS, including any corporate compliance policy or code of conduct now or hereafter adopted by CMS. . . " (Ex. D and Ex. F, ¶1(b).)

On January 2, 2013, Harris gave Plaintiff 120 days' notice of CMS' decision to terminate his employment via letter. (Ex. X; Rifai Dep. at 162.) On January 5, 2013, Plaintiff sent an email titled "Last Thoughts" to Dr. Kondash, Nurse Practitioner Maureen McFarland, Harris and Terry Purcell, that among other things, stated:

> However, in our meeting this past Wednesday, I asked you and Terry one question in God' [sic] name; would you let you children sign the contract that Drew Harris gave us ? you both couldn't answer. This fact and the outpouring of emotions from everyone I met in the hospital in the last 3 days made me realize that we were all prisoners inside Blue Mountain Health System and the warden is torturing everyone and holding everyone hostage to his ego and whimes [sic]. I hold no ills toward you, my and Dr. Abbas' solace is that we have 118 more days to go. My conern [sic] is for the mentally ill of Carbon County, with the best psychiatrists, nurse practitioners, PA and therapists gotten rid of, who will be there for them? May God bless the employees of Blue Mountain Health System (Sans warden), the people of Carbon County and have mercy on our souls.

(Ex. BB.)

Harris testified at his deposition that "at the end of reading that email my life was at stake," and that he felt threatened by the email because it read "[a]lmost like a goodbye letter." (Harris Dep., pp. 67-69.) Purcell and McFarland also testified at deposition that they found the email to be threatening. (Purcell Dep., pp. 101-103; McFarland Dep., pp. 60.) Blue Mountain Health System has a zero-tolerance Workplace Violence Policy that prohibits conduct that "creates a reasonable fear of injury to another person." (Ex. DD.)

Harris testified that he determined Plaintiff's email was threatening and violated the Workplace Violence Policy, and therefore, decided to terminate Plaintiff immediately. (Harris Dep., pp. 66-93.) Accordingly, on January 7, 2013, Harris sent Plaintiff a letter informing him that CMS was terminating his employment for cause pursuant to Paragraph 11 of Contract 2. (Ex. FF.) Paragraph 11 of Contract 2 states that termination for cause is effective immediately; however, Harris' January 7, 2013 letter stated Plaintiff's termination was effective May 7, 2013. (Ex. F; Ex. FF.) Between January 14 and 23, 2013, Plaintiff went to GHMH and completed patient medical files. (Rifai Dep. at 277.)

### C. DISCUSSION

Defendants argue that all of the claims contained in Plaintiff's Amended Complaint should be dismissed. For the reasons set forth below, Plaintiff's ADA claim will be dismissed, as will all claims against GHMH. The remaining claims shall be allowed to remain.

#### 1. DISMISSAL OF GNADEN HUETTEN MEMORIAL HOSPITAL

Defendants argue that Gnaden Huetten Memorial Hospital ("GHMH") is not a proper party to this case because it is unrelated to the allegations contained in Plaintiff's Amended Complaint, and because GHMH and CMS are not a "single employer" under Title VII.

Plaintiff's employment contract is between him and CMS. GHMH was merely the location where Plaintiff performed psychiatric services under his contract with CMS. GHMH was not Plaintiff's employer and made no employment related decisions as to

Plaintiff. GHMH did issue Plaintiff's paycheck, but that was the extent of its interactions with him.

Further, there is insufficient evidence to hold GHMH in this case under the "single employer" theory. "A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" Martin v. Safeguard Scientifics, Inc., 17 F.Supp. 357, 359 (E.D. Pa., 1998). To show that two entities are a single employer, a plaintiff must show 1) functional integration of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership. Martin, 17 F.Supp. at 357.

It is true that Harris is CEO of both GHMH and CMS, but that is the only factor in the test that Plaintiff can satisfy. Plaintiff has presented no evidence of centralized control of labor relations or common ownership. There is no evidence that GHMH and CMS functioned as a "single employer" such that GHMH should remain in this lawsuit. Accordingly, Defendants' motion is granted in this respect and GHMH is dismissed from this action.

## 2. RELIGIOUS/NATIONAL ORIGIN DISCRIMINATION

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, employees may assert two different theories of religious discrimination: failure to accommodate and disparate treatment. E.E.O.C. v. Aldi, Inc., 2008 WL 859249,

at *5 (W.D. Pa. Mar. 28, 2008); citing Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 281 (3d Cir.2001).

### a. Failure to Accommodate

Defendants argue that they are entitled to summary judgment on Plaintiff's Title VII failure to accommodate claim, as Plaintiff cannot make out a prima facie case. Plaintiff's opposition to Defendants' summary judgment motion does not dispute that he cannot make out a claim for failure to accommodate under Title VII. Accordingly, summary judgment will be granted on this aspect of the religious discrimination claim.

### b. Disparate Treatment

To establish a prima facie case of religious or national origin discrimination under a disparate treatment theory, courts use the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1973). First, the plaintiff has the burden of proving a prima facie case of discrimination by the preponderance of the evidence. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id. at 804. To establish a prima facie case, the plaintiff must show: 1) he is a member of a protected class; 2) he is qualified for the position; 3) he suffered an adverse employment action; and 4) that the action occurred under circumstances that give rise to an inference of unlawful discrimination, such as when a similarly-situated person not of the protected class is treated differently. Abramson, 250

F.3d at 281-82 (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

Defendants admit that Plaintiff is a member of two protected classes and was terminated by CMS. However, Defendants argue that Plaintiff cannot establish the fourth prong of the prima facie case – that the circumstances give rise to an inference of unlawful discrimination. To this end, Defendants argue that "the evidence most often used to establish a 'nexus' between an adverse employment action and impermissible discriminatory treatment is evidence that a plaintiff 'was treated less favorably than similarly situated employees who are not in plaintiff's protected class.'" (Def's Memo of Law, p. 10, citing Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008). Defendants argue that since Plaintiff has failed to identify any similarly situated employees who were treated more favorably than him, he cannot establish the fourth prong of the prima facie case.

However, Defendants ignore the fact that identifying a similarly situated employee is not the **only** way to meet the fourth prong of the test. In establishing a prima facie case, Plaintiff can meet the fourth prong by showing that "a similarly situated person outside of the protected class was treated more favorably, **or** the circumstances of the adverse action give rise to the inference of discrimination." Oakley v. Orthopaedic Assocs. of Allentown, Ltd., 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) (emphasis added), citing Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999); Parsia v. Allied Tube & Conduit Corp., 2009 WL 750191, at *11–12 (E.D.Pa. Mar. 19, 2009). Therefore, Plaintiff can establish the fourth prong by showing that the circumstances of the adverse employment action give rise to the inference of discrimination. A plaintiff's

burden is "not intended to be onerous" at this stage of the framework. Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

In this case, Plaintiff established that Defendants knew him to be Syrian and Muslim. (Rifai Dep. at 280-85.) Further, Defendants hired Robert Chambliss, M.D., non-Syrian and not known to be Muslim, to replace Plaintiff. (Docket No. 34, ¶¶ 60, 73; Purcell Dep., p. 46, 52.) These facts are sufficient to meet Plaintiff's non-onerous burden at this stage of the framework, and Plaintiff has made out a prima facie case of discrimination.

As Plaintiff has established a prima facie case of discrimination, the burden now shifts to Defendants to establish a legitimate, non-discriminatory reason for the employment decision. Abramson, 260 F.3d at 282. Defendants meet this burden by alleging that they terminated Plaintiff for writing an email to Harris that violated Defendants' workplace violence policy, as the burden on defendants at this juncture is "relatively light." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Accordingly, the burden now shifts back to Plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext for discrimination. Id.

In order to demonstrate pretext, a plaintiff "must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F.3d 151, 165-66 (3d Cir. 1999) (emphasis in original) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Plaintiff cannot "simply show that [defendant's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated [defendant], not whether [defendant] is wise, shrewd, prudent or competent." Fuentes, 32 F.3d at 765. Instead, plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its action that a reasonable fact finder <u>could</u> rationally find them unworthy of credence, and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." Id. (emphasis in original.)

The sole reason given by Defendants for Plaintiff's firing is the January 5, 2013 email, which they allege was threatening. In reviewing the text of the email, I find that this email is clearly such a "weak" and "implausible" reason for firing, such that a "reasonable factfinder could find this reason to be unworthy of credence." Sarullo v. U.S. Postal Service, 352 F.3d 789, 800 (3d Cir. 2003). Plaintiff's email read, in pertinent part: "This fact and the outpouring of emotions from everyone I met in the hospital in the last 3 days made me realize that we were all prisoners inside Blue Mountain Health System and the warden is torturing everyone and holding everyone hostage to his ego and whimes [sic]. I hold no ills toward you, my and Dr. Abbas' solace is that we have 118 more days to go. My conern [sic] is for the mentally ill of Carbon County, with the best psychiatrists, nurse practitioners, PA and therapists gotten rid of, who will be there for them? May God bless the employees of Blue Mountain Health System (Sans warden), the people of Carbon County and have mercy on our souls." This email certainly does not contain an explicit threat. Furthermore, it would stretch the imagination to have it be considered an implicit threat. Mr. Harris, Mr. Purcell and Nurse McFarland all testified

10

that they found the email to be threatening. However, Dr. Kondash admitted that he had to read the email several times in order to determine the threat. (Kondash Dep. pp. 30-31.) In fact, the email to Dr. Harris clearly states "I hold no ills toward you." A genuine issue of material fact exists as to whether this email was in fact a threat, or if it is actually pretext for discrimination. Therefore, Defendants' motion for summary judgment as to Plaintiff's national origin/religious discrimination claims is denied.

### 3. ADA DISCRIMINATION

Plaintiff claims that Defendant "regarded" him as being mentally impaired when he made threatening remarks to Harris and therefore discriminated against him under the Americans with Disabilities Act. The ADA provides that an individual has a disability if he: (1) has a "physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1).

To prevail on a "regarded as" disability discrimination claim under the Americans with Disabilities Act, Plaintiff must show that he either "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment." Eshelman v. Agere Systems, Inc., 554 F.3d 426, 434 (3d Cir. 2009). A plaintiff may not allege a perceived disability based on "impairments that are transitory and minor," that is, lasting six months or less. 42 U.S.C. § 12102(3)(B).

Defendants argue that no defendant perceived Plaintiff to be disabled by mental impairment, and that even if they were aware of Plaintiff's mental state, the mere fact of awareness is insufficient to demonstrate that they regarded Plaintiff as disabled. I do not need to address these arguments, because I find that there is no genuine issue of material fact that Plaintiff's alleged mental impairment is "minor or transitory." The facts demonstrate that Defendants terminated Plaintiff without cause on January 2, 2013, and he responded on January 5, 2013 with an email that Defendants perceived to be threatening. Thereafter, Plaintiff was terminated with cause on January 7, 2013. Plaintiff's mental issues were clearly induced by a specific, non-recurring event (his termination), and therefore do not constitute a disability under the ADA. Plaintiff has failed to allege a perceived disability that would have been anything other than transitory and minor within the meaning of the statute. Plaintiff was terminated by Defendants without cause on January 2, 2013—the earliest possible date of the onset of his perceived mental issues—and five days later he was terminated with cause. As our Court of Appeals held in Seibert v. Lutron Electronics, 408 Fed.Appx. 605, 608 (3d Cir. 2010), mental issues "induced by specific, nonrecurring events" do not constitute disability under the ADA. Plaintiff has failed to produce any competent evidence that his perceived mental impairment lasted more than six months. Accordingly, I hold that Plaintiff's perceived impairment falls short of the requirement contained in 42 U.S.C. § 12102(3)(B), and therefore, Plaintiff has failed to establish a prima facie case of disability discrimination. Summary judgment is granted on this claim.

4. **BREACH OF EMPLOYMENT CONTRACT**

Plaintiff alleges that Defendants breached their employment contract with him by

violating both the termination and the compensation provisions. In a breach of contract claim such as this, a plaintiff must prove: 1) the existence of a contract; 2) a breach of a duty imposed by the contract; and 3) damages. Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. 2005). With regards to the termination provision, Defendants argue that Plaintiff has not established a breach of duty imposed by Contract 1 or Contract 2, as the contracts allowed Plaintiff to be terminated immediately "for cause" for specific enumerated reasons including "willful or intentional breach or gross neglect of his duties under this Agreement." Defendants further argue that Plaintiff had a duty to "comply with all policies, rules and regulations of CMS, including any corporate compliance policy or code of conduct now or hereafter adopted by CMS," and that Plaintiff's allegedly threatening email sent to Harris violated CMS' workplace violence policy, allowing for immediate termination.

I find that there is a genuine issue of material fact as to whether Contract 2 permitted Defendants to terminate Plaintiff for sending his January 5, 2013 email. "Cause" for termination under Contract 2 does not explicitly list threatening emails as a reason for immediate termination. Further, at his deposition, Harris, the person who made the decision to terminate Plaintiff, could not identify which of the enumerated definitions of "cause" he relied upon in terminating Plaintiff's employment. (Harris Dep., pp. 107-112.) Defendants argue that sending the threatening email violated the workplace violence policy, and therefore, Plaintiff did not comply with all policies of CMS and could be terminated immediately for cause under the "willful or intentional breach or gross neglect of his duties" reason set forth in Contract 2. However, disputes exist as to whether a threatening email would violate the workplace violence policy, and whether

13

the email itself was even threatening. For these reasons, I find that there is a genuine issue of material fact as to whether Defendants were permitted to terminate Plaintiff immediately under Contract 2, and will deny summary judgment on this issue.

A genuine issue of material fact also exists as to whether Defendants breached the compensation provisions of Contract 2. Plaintiff claims that he was not paid for earned but unused paid time off that he had accumulated the time of his termination, as well as certain fringe benefits to which he was allegedly entitled. Defendants argue that they entered into an "omnibus resolution" of all matters related to Plaintiff's employment that resulted in him receiving his final paycheck, and being entitled to no further benefits. This is clearly a matter in dispute, and it will be up to a factfinder to determine if there was a breach of the compensation provisions, or if Plaintiff settled all matters with Defendants when he received his final paycheck.

Further, Defendants argue that Plaintiff has failed to raise a genuine issue of material fact as to whether he suffered contractual damages. Plaintiff has alleged that he was entitled to paid time off that he had already earned at the time of his termination. Based upon my finding that there is an issue of fact as to whether Defendants breached the compensation provision of Contract 2 by failing to pay for unused but accrued paid time off and fringe benefits, I find that there is also a genuine issue of material fact as to whether Plaintiff suffered contractual damages. Accordingly, Defendants' motion for summary judgment is denied as to the breach of contract claim.

### 5. WAGE PAYMENT AND COLLECTION LAW

The Pennsylvania Wage Payment and Collection Law establishes a framework

governing the payment of wages to employees by employers with Pennsylvania. 43 Pa.C.S.A. § 260.1 et seq. "The WPCL does not create a right to compensation." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990). Rather, "it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." De Asencio v. Tyson Foods, Inc. 342 F.3d 301, 309 (3d Cir. 2003).

Defendants argue that Plaintiff has failed to establish that he is contractually entitled to a bonus, and that he accepted a compromised final payment for any obligations under the contract, so he is not owed any further monies. As I determined above that there is a genuine issue of material fact as to whether Defendants breached the compensation provisions of Plaintiff's contract, there is also a genuine issue of material fact as to whether Plaintiff has a remedy under the WPCL. Therefore, I will deny Defendants' motion for summary judgment on this claim.

### III.  MOTION TO AMEND ANSWER TO AMENDED COMPLAINT

Defendants have filed a motion seeking to amend their answer to Plaintiff's Amended Complaint, alleging that they mistakenly indicated in their Answer that Plaintiff's WPCL claims had been dismissed by the Court, when they had not. Defendants seek to amend their answer so they can deny the allegations contained in Plaintiff's WPCL claim. Plaintiff opposes this amendment, arguing that it would not be in the interests of justice to allow Defendants to amend their answer at this time.

As amendments are to be freely granted under the Federal Rules of Civil Procedure and because the parties have engaged in discovery on the WPCL claim, I will permit Defendants' amendment. Therefore, Defendants' Motion to Amend is granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted in part and denied in part, and Defendants' Motion to Amend is granted. An appropriate order follows.